# BALAREZO LAW

400 FIFTH STREET
SUITE 300
WASHINGTON, DC 20001

A. EDUARDO BALAREZO, ESQ.
ADMITTED IN NY, MD & DC
AEB@BALAREZOLAW.COM

(202) 639-0999 (TEL)
(202) 639-0899 (FAX)

WWW.BALAREZOLAW.COM

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2014 SEP 19 P 4: 16

CLERK'S OFFICE
AT BALTIMORE

September 18, 2014

Honorable Ellen L. Hollander
United States Courthouse
101 W. Lombard Street
Baltimore, MD 21201

    Re:  *United States v. Antoine Wiggins*
        Criminal No. ELH-13-0512

Dear Judge Hollander:

    I respectfully write to inform the Court that Mr. Wiggins will be pleading guilty at the hearing scheduled for September 19, 2014. However, rather than plead pursuant to the plea agreement provided by the government (dated September 17, 2014), Mr. Wiggins will be pleading to the indictment.

**Offense of conviction**

    1.  Mr. Wiggins agrees to plead guilty to Counts One and Four of the Indictment now pending against him, which charge him in Count One with conspiracy to distribute and possess with intent to distribute one kilogram or more of a quantity of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 846; and in Count Four with possession with the intent to distribute a quantity of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1). Mr. Wiggins admits that he is, in fact, guilty of both offenses and will so advise the Court.

**Elements of the Offense**

    2.  The elements of the offense to which Mr. Wiggins has agreed to plead guilty are as follows:

Count One

    a.  At or about the time charged in the Indictment, in the District of Maryland and elsewhere, Mr. Wiggins knowingly, intentionally and willfully agreed with

      one or more persons to distribute, or possess with the intent to distribute, one kilogram or more of heroin;

  b.    Mr. Wiggins' participation was knowing and voluntary, that is not by accident or mistake.

### Count Four

  a.    On or about January 4, 2103, Mr. Wiggins possessed a controlled substance (heroin);

  b.    Mr. Wiggins knew that he possessed a controlled substance;

  c.    Mr. Wiggins intended to distribute heroin.

## Penalties

3.     The maximum sentence provided by statute for Count One is as follows: life imprisonment with a mandatory minimum of ten (10) years imprisonment, a $10,000,000 fine, and at least five (5) years supervised release. The maximum sentence provided by statute for Count Four is as follows: 20 years imprisonment, a $1,000,000 fine and three (3) years supervised release. In addition, Mr. Wiggins must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, for each offense, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. Mr. Wiggins understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and Mr. Wiggins could be returned to custody to serve another period of incarceration and a new term of supervised release. Mr. Wiggins understands that the Bureau of Prisons has sole discretion in designating the institution at which Mr. Wiggins will serve any term of imprisonment imposed.

## Waiver of Rights

4     Mr. Wiggins understands that by entering into this agreement, he surrenders certain rights as outlined below:

  a.    If Mr. Wiggins had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if Mr. Wiggins, the government and the Court all agreed.

---

[1]     Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, Mr. Wiggins shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

b. If Mr. Wiggins elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and Mr. Wiggins would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before Mr. Wiggins could be found guilty of any count. The jury would be instructed that Mr. Wiggins was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If Mr. Wiggins went to trial, the government would have the burden of proving Mr. Wiggins guilty beyond a reasonable doubt. Mr. Wiggins would have the right to confront and cross-examine the government's witnesses. Mr. Wiggins would not have to present any defense witnesses or evidence whatsoever. If Mr. Wiggins wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d. Mr. Wiggins would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e. If Mr. Wiggins were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, Mr. Wiggins knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, Mr. Wiggins will be giving up all of these rights. By pleading guilty, Mr. Wiggins understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements Mr. Wiggins makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts Mr. Mr. Wiggins' plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h. By pleading guilty, Mr. Wiggins will also be giving up certain valuable civil rights.

**Advisory Guidelines Apply**

5. Mr. Wiggins understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. Mr. Wiggins further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

   a. Mr. Wiggins believes that the offenses to which he is pleading guilty have a base offense level of 32, pursuant to U.S.S.G. § 2D1.1(4) because the amount of heroin Mr. Wiggins conspired to distribute was at least one kilogram, but less than three kilograms. Mr. Wiggins believes that Count Four will be grouped with Count One for the purpose of calculating the Guidelines.

   b. The government has represented to the Court that it does not oppose a two-level reduction in Mr. Mr. Wiggins' adjusted offense level, based upon Mr. Wiggins' recognition and affirmative acceptance of personal responsibility for his criminal conduct. The government has also represented to the Court that it agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of Mr. Mr. Wiggins' acceptance of personal responsibility for his conduct.

   c. Mr. Wiggins is free to argue for any offense characteristics, sentencing guidelines factors, departures and/or adjustments set forth in Chapters 2, 3 or 4 of the United States Sentencing Guidelines, including role in the offense, as well as a variance pursuant to 18 U.S.C. § 3553.

   d. Mr. Wiggins understands that the Government intends to seek adjustments for a four (4) level increase, pursuant to U.S.S.G. § 3B1.1 (a) for role in the offense and a two (2) level increase, pursuant to U.S.S.G. §3C1.2 for fleeing from law enforcement.

   e. In anticipation of the forthcoming changes to the Drug Quantity Table in the United States Sentencing Guidelines 2D1.1, Mr. Wiggins will be seeking a 2 level downward variance. In the event the Court were to grant the variance, Mr. Wiggins agrees not to seek a sentence reduction under 18 U.S.C. § 3582(c)(2) based on the retroactive application of Amendment # 3 to the U.S.S.G. submitted to Congress on April 30, 2014.

   f. Based on the information available to Mr. Wiggins at this time, he believes that he falls into criminal history category II. However, he understands that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income. Mr.

4

> Wiggins understands that the Court will make a final determination as to his criminal history and sentencing guideline range.

**Forfeiture**

6.  Mr. Wiggins understands that the Indictment contains a Forfeiture Allegation wherein, upon conviction, the Court may enter an Order of Forfeiture relating to the following property:

> a.  $845.00 the Defendant abandoned when he fled from the police on January 3-4, 2013;
>
> b.  $81,093, along with two (2) money counting machines, five (5) cell phones and a police scanner which were seized when a search warrant was executed at 4150 Brown Bark Circle, Randallstown MD on February 1, 2013;
>
> c.  $7,456.00 when the Defendant was arrested on February 27, 2013;
>
> d.  $52,507, along with a Rolex watch and a diamond necklace seized when the Defendant was arrested on September 24, 2013
>
> e.  33' Doral Cruiser Hull number CA-QJA01511A101; and
>
> f.  2007 Jeep Wrangler, VIN 1J4GA39187L172823, bearing Maryland license 4BC7293;

Mr. Wiggins ~~does not~~ concedes to the forfeiture of these items. ~~that this or any other property seized by the government constitutes, derives from, or are proceeds obtained, directly or indirectly from any illicit activity.~~ [handwritten: AW / MW]

I have read this letter and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_9/19/14_
Date

_[signature]_
Antoine Wiggins

5

I am Mr. Wiggins' attorney. I have carefully reviewed every part of this letter with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

9/19/14
Date

A. Eduardo Balarezo, Esquire

Cc:   ***Via Email***
      Christopher J. Romano, Esq.
      Assistant United States Attorney

## STATEMENT OF FACTS

Mr. Wiggins agrees that if this case had proceeded to trial, the government would have presented the following evidence:

As part of an investigation into heroin trafficking in the District of Maryland, the FBI's Safe Streets Task Force, sought and received authorization to intercept cellular telephone calls from a number of individuals operating primarily in Baltimore City and County. Based on intercepted calls, as well as video surveillance, the FBI identified Mr. Wiggins as one of those individuals. On multiple occasions, the FBI intercepted Mr. Wiggins over court-authorized wiretaps speaking with other individuals. Mr. Wiggins believes that the government would present testimony that interprets his conversations on some of those intercepts as narcotics transactions with other individuals. Mr. Wiggins also believes that the government would present evidence that he leased an apartment at 1631 Whetstone Way, in Baltimore City that, according to a government cooperator, was utilized as a transit point for the couriers transporting the heroin.

Mr. Wiggins believes that the government would also present evidence that on January 3-4, 2013, after a traffic stop conducted by Baltimore City Police he abandoned more than ~~500~~ 500 gel caps of heroin. Later, Baltimore County Police located an additional 175 gel caps of heroin in and around his vehicle.

Mr. Wiggins also believes that law enforcement agents subsequently executed search warrants at Mr. Wiggins' residence, where more than $80,000 in cash, two money counters and a police scanner were seized, and at the Whetstone Way apartment, where more than $52,000 in cash, heroin, a digital scale with heroin residue and an electronic "bug" detector were seized.

BALAREZO LAW

9/19/14
Date

_____
Antoine Wiggins

9/19/14
Date

_____
A. Eduardo Balarezo, Esq.

8