IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. ELH-13-512 |
| ANTOINE WIGGINS,<br>*Defendant.* | |

**MEMORANDUM**

On June 1, 2020, Antoine Wiggins, proceeding *pro se*, filed a "Motion To Reduce Sentence Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i)." ECF 691 (the "Motion"). The government opposes the Motion (ECF 706) and submitted five exhibits. ECF 706-1 to ECF 706-5. Wiggins, through appointed counsel, filed a reply (ECF 709) and seven exhibits. ECF 709-1 to ECF 709-7.

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall deny the Motion.

**I.   Background**

On September 24, 2013 a grand jury sitting in the District of Maryland returned an indictment against Wiggins and thirteen others. ECF 1. Wiggins was charged in Count One with conspiracy to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846, and in Count Four with possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1). ECF 1. Wiggins initially appeared before then-Magistrate Judge Stephanie Gallagher on September 25, 2013, and was temporarily detained pending a detention hearing. ECF 19. On September 27, 2013, Wiggins was ordered detained pending trial. ECF 60.

Wiggins entered a plea of guilty as to Counts One and Four of Indictment on September 19, 2014. ECF 339 (Arraignment); *see* ECF 344. Notably, defendant's plea was not made pursuant to a plea agreement. *See* ECF 344.

The Presentence Report ("PSR," ECF 381; ECF 706-4) contained a factual recitation regarding defendant's conduct. According to the PSR, law enforcement identified Wiggins as a member of a heroin trafficking conspiracy operating in Baltimore; he entered the conspiracy in 2013. *Id.* ¶ 1. Further, on or about January 3, 2013, Wiggins abandoned more than 500 gel caps containing heroin during a traffic stop conducted by Baltimore City Police. *Id.* ¶¶ 10, 14. Law enforcement recovered an additional 175 gel caps of heroin from Wiggins's abandoned car. *Id.* A subsequent search of Wiggins's residence and stash house led to the recovery of more than $130,000 in cash, two money counters, a digital scale, a police scanner, and an electronic "bug" detector. *Id.* ¶¶ 11, 15.

The PSR determined that defendant had a final offense level of 31. *Id.* ¶ 29. And, he had a Criminal History Category of II. *Id.* ¶ 46. In particular, in 1995, Wiggins was convicted in State court for possession of a handgun. *Id.* ¶ 38. In 1997, defendant was sentenced in State court to 12 months' imprisonment for possession of cocaine with intent to distribute. *Id*. ¶ 40. And, in 2000, in case AMD-99-0583, Judge Andre Davis sentenced Wiggins to 135 months of imprisonment, followed by five years of supervised release, for conspiracy to distribute and possession with intent to distribute cocaine and cocaine base. Based on a change in the Guidelines, the sentence was later reduced to 120 months. PSR, ECF 381, ¶ 43. *See* AMD-99-0583, ECF 209.

Based on a total offense level of 31 and a criminal history category of II, the advisory sentencing guideline range for Wiggins in this case was 121 to 151 months of imprisonment. *Id.* ¶ 67.  He was also subject to a mandatory minimum term of 10 years' imprisonment. *Id.* ¶ 65.

Sentencing was held on June 17 and June 23, 2015.  ECF 520; ECF 527.  After hearing argument from defendant and the government, I sentenced Wiggins to concurrent terms of 126 months' imprisonment on each count.  ECF 529 (Judgment).  As noted, he has been in custody since September 25, 2013.  ECF 19.

Wiggins, who has served approximately 80 months of his sentence, is presently incarcerated at Yazoo City Low FCI in Mississippi.  ECF 709-2.  Born in 1976, defendant is 44 years-old.  *Id.*  His projected release date is September 29, 2022.  *Id.*

On April 3, 2020, the Court received a request for a sentence reduction, submitted via email from a woman who identified herself as Wiggins's mother-in-law. ECF 681. In her letter, Wiggins's mother-in-law claimed that Wiggins has "less than 1 year to serve" on his sentence. *Id.*  She asked the Court to release Wiggins due to general health concerns arising from the COVID-19 pandemic.  *Id.*  The Court decided to construe the request as a motion for early release (ECF 682), and the government responded.  ECF 683.

In a Memorandum (ECF 685) and Order (ECF 686) of May 5, 2020, I denied the motion without prejudice, on the grounds that the motion was "silent as to any attempt by defendant to exhaust his remedies before seeking relief from this Court."  ECF 685 at 3.  Defendant submitted the Motion on June 1, 2020.  EF 691.

Additional facts are included, *infra*.

## II.   Statutory Framework

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed."

18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. Section 3582 was adopted as part of the Sentencing Reform Act of 1984. It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief. *See*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying motion for compassionate release because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished. BOP rarely filed motions on an inmate's behalf. As a result, compassionate release was exceedingly rare. *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a

4

defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.  So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13.  The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under § 3582.  *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

### III. COVID-19

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, ___ F. Supp. 3d ___, 2020 WL 2556496, at *1 (D. Md. May 20, 2020). That crisis is COVID-19.[1] The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic. *Id.*

That said, the Court must underscore that the virus is highly contagious. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh.[2] Moreover, although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted). As of August 3, 2020, COVID-19 has infected about 4.6 million Americans and caused over 150,000 deaths in this country. *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Aug. 3, 2020).

---

[1] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW (last accessed June 15, 2020).

[2] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

The COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918.  *See United States v. Hernandez*, ___ F. Supp. 3d ___, 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration.").  The pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, ___ Fed. App'x ___, 2020 WL 3100187 (6th Cir. June 11, 2020).  Indeed, for a significant period of time, life as we have known it came to a halt.  Although many businesses have reopened, many are subject to substantial restrictions.  And, in view of the recent resurgence of the virus, businesses are again facing closure.

Unfortunately, there is currently no vaccine, cure, "or proven effective treatment" that is available.  *Id.* (citation omitted).  Moreover, according to the Centers for Disease Control and Prevention ("CDC"), certain risk factors increase the chance of severe illness.  Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.  *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020, the CDC revised its guidance. Then, on July 17, 2020, to reflect the most recently available data, the CDC again revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19.  *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (July 17, 2020), https://bit.ly/38S4NfY.   According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index

("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; and Type 2 diabetes.

The CDC has also created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include cerebrovascular disease, hypertension, pregnancy, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, smoking, and Type I diabetes. *See id.* Moderate to severe asthma is an underlying medical condition that was moved to the new category by the CDC; it is now identified as a condition that "might" put an individual at higher risk for COVID-19 complications. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020). Social distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2. Prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id.*; *see also Cameron*, 2020 WL 2569868, at *1. They are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of

COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19. The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at *2. Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected. As the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

Moreover, Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency

9

. . . ." *Hallinan*, 2020 WL 3105094, at *9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

The BOP has implemented substantial measures to protect prisoners from COVID-19 and to treat those who are infected. *See* ECF 706 at 10-12 (detailing measures that BOP has implemented at Yazoo City Low FCI). But, the defense asserts that FCI Yazoo City Low "has been one of the hardest hit by COVID-19." ECF 709 at 3. Nevertheless, as of August 3, 2020, there are no reported infections among the inmates and three infections among the staff at FCI Yazoo City Low. *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1. Two inmates at Yazoo City Low have died from COVID-19. *Id.* The high security facility in Yazoo City currently has 18 active cases among the inmates and 1 inmate death, while the medium security facility has one active case and no inmate deaths.

To be sure, as with the country as a whole, the virus persists in penal institutions.[3] As of August 3, 2020, the BOP reported that 2,325 inmates and 503 BOP staff currently tested positive for COVID-19; 8,256 inmates and 708 staff have recovered; and 105 inmates and one staff member have died from the virus. *See* https://www.bop.gov/coronavirus/ (last accessed Aug. 3, 2020). *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1.

### IV. Discussion

Wiggins seeks a reduction of his sentence to time-served under 18 U.S.C. § 3582(c)(1)(A)(i), contending that "his asthma and the current COVID-19 pandemic" constitute an "extraordinary and compelling" basis for his release. ECF 691 at 1. In particular, Wiggins avers that he "suffer[s] from asthma, severe sinusitis, and severe allergies" that "cause [him] to

---

[3] The *New York Times* has reported that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country. Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2.

have breathing problems." *Id.* at 4. In defendants' view, having to serve the remainder of his sentence would be "unduly punitive and dangerous." *Id.* at 12.

The government opposes Wiggins's Motion. The government claims that he has failed to exhaust his administrative remedies. ECF 706 at 3, 6, 12. In addition, the government contends that defendant's criminal history demonstrates that he is a danger to the community. *Id.* at 9.

I am satisfied that Wiggins has exhausted his administrative remedies, as required by § 3582(c)(1)(A). Wiggins claims that he wrote to the Warden of Yazoo City Low FCI requesting compassionate release or placement on home confinement. ECF 691 at 2. In addition, his wife and mother-in-law also wrote to the Warden, requesting Wiggins's release. *Id.* When Wiggins's family did not receive a response, his wife contacted her local congressional office, and a staffer subsequently contacted the BOP regarding Wiggins's situation. *See* ECF 709-1 (4/21/2020 email from District Director for Maryland's 7th Congressional District). These efforts apparently bore fruit because on April 29, 2020, Ms. Wiggins received correspondence from the Warden. ECF 709-2. The letter stated, *id.*:

> Thank you for your correspondence concerning your husband's situation within the Federal Bureau of Prisons, FCC Yazoo City, Mississippi. We understand the constraints of this pandemic and we assure you, all measures are being followed to ensure the safety and security of all inmates and staff.
>
> A review of this request for consideration for Compassionate Release/Reduction in Sentence in accordance with 18 U.S.C. §§ 3572 and 4205(g) determined a review will be conducted based on compelling circumstances (COVID-19) and a medical condition of "Asthma."
>
> Additionally, Mr. Wiggins has been reviewed and determined ineligible for placement in Home Confinement to serve the remainder of his sentence based on not meeting the COVID-19 Home confinement criteria.

Despite the Warden's assurances that the BOP would assess Wiggins's eligibility for compassionate release, neither Wiggins nor his wife has received a response from the Warden.

Therefore, because more than thirty days have elapsed since the Warden acknowledged receipt of Wiggins's request for compassionate release, he has exhausted his administrative remedies. Consequently, defendant's Motion is properly before the Court.

However, Wiggins has not presented a medical condition identified by CDC that places him at a risk for severe illness from the virus. As noted, defendant avers that he has asthma. But, Wiggins has not provided the Court with any medical records to establish that his asthma has any impact on his daily life. His mother explains that Wiggins had asthma and hypertension as a child. ECF 709-6. She claims, however, that the defendant's childhood medical records are not available. *Id.*

Although the Court does not question that Wiggins has asthma, in 2014 Wiggins described himself as "healthy" to U.S. Probation and Pretrial Services and "denied receiving any medical treatment or taking any prescription medication." ECF 706-4, ¶ 87. And, there is no indication of his use of an inhaler or his current need for medication. Moreover, the CDC now classifies asthma as a lesser risk factor for severe illness related to COVID-19.

Absent evidence of current underlying conditions that make Wiggins particularly vulnerable to COVID-19, his mild asthma alone is not grounds for compassionate release. This aligns with the decisions of numerous courts to deny compassionate release where the defendant claimed mild asthma as his or her only medical condition. *See United States v. Bailey*, CCB-14-146, 2020 WL 4366340, at *2 (D. Md. July 30, 2020) (declining to grant compassionate release solely on the basis of asthma); *United States v. Wilson*, 2020 WL 4287592, at *4 (S.D. W.Va. July 27, 2020) ("mild intermittent asthma" was not a compelling reason to grant compassionate release); *see also, e.g.*, *United States v. Wheeler*, No. 19-cr-00085 (ESH), 2020 WL 2801289, at *3 (D.D.C. May 29, 2020); *United States v. Perez*, No. 15-cr-2874-BAS-1, 2020 WL 3639739,

at *4 (S.D. Cal. July 6, 2020); *United States v. Slone*, Cr. No. 16-400, 2020 WL 3542196, (E.D. Pa. June 30, 2020); *United States v. Anguiera*, No. 11-CR-116S (1), 2020 WL 3424530, at *5 (W.D.N.Y. June 23, 2020); *United States v. Mascuzzio*, No. 16-cr-576 (JFK), 2020 WL 3050549, at *3 (S.D.N.Y. June 8, 2020); *United v. Miller*, No. 18-cr-30034, 2020 WL 2093370, at *3 (C.D. Ill. May 1, 2020).

Because Wiggins has failed to provide an extraordinary and compelling reason for compassionate release, I need not address the relevant § 3553(a) sentencing factors. Nevertheless, I note that a reduction of Wiggins's sentence to time-served would be inconsistent with the § 3553(a) factors.

Among other reasons, this is not Wiggins's first federal offense. In 2000, Judge Davis sentenced Wiggins to 135 months for conspiracy to distribute and possession with intent to distribute cocaine. Judge Davis later reduced that sentence to 120 months. But, despite serving a lengthy federal sentence, Wiggins returned to drug trafficking activities. Under 18 U.S.C. §§ 3142(g), 3582(c)(1)(A)(ii), and 3553(a), this counsels heavily against granting Wiggins a reduction in his current sentence.

## V.  Conclusion

For the forgoing reasons, I shall deny the Motion (ECF 691).

An Order follows, consistent with this Memorandum.

Date:   August 3, 2020                                       /s/
                                                        Ellen Lipton Hollander
                                                        United States District Judge